United States District Court
Southern District of Texas

**ENTERED**

February 09, 2024

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCP DISTRIBUTORS, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-4522 |
| | § | |
| TEXAS POOL GROUP, L.L.C., | § | |
| KEVIN ENTRALGO, WILLIAM HICKS, | § | |
| and BRYAN THOMPSON, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, SCP Distributors, L.L.C. ("SCP" or "Plaintiff"), brings this action against Defendants, Texas Pool Group, L.L.C. ("TPG"), Kevin Entralgo ("Entralgo"), William Hicks ("Hicks"), and Bryan Thompson ("Thompson"), asserting causes of action for breach of contract, quantum meruit, and suit on a sworn account against TPG, and for breach of guarantee against Entralgo, Hicks, and Thompson.[1]  Pending before the court is Plaintiff's Motion for Summary Judgment ("Plaintiff's MSJ") (Docket Entry No. 26).  Also pending are Defendants Response to Plaintiff's Motion for Summary Judgment ("Defendants' Response")(Docket Entry No. 27) filed by TPG and Entralgo, Plaintiff's Reply in Support of Its Motion for Summary Judgment ("Plaintiff's Reply") (Docket Entry No. 28), and Plaintiff's Supplement in Support of Its Motion for Summary Judgment ("Plaintiff's Supplement") (Docket Entry No. 30).  For the reasons stated below, Plaintiff's MSJ will be granted.

-----

[1]Plaintiff's First Amended Complaint ("Plaintiff's FAC"), Docket Entry No. 7.

## I.   Factual and Procedural Background

### A.   Undisputed Facts

TPG submitted a four page Credit/Business Application and Agreement ("Credit Agreement") to Plaintiff for account number 247771 bearing an application date of August 23, 2019.[2]  On the first page under the heading "Owners/Partners/Officers," the Credit Agreement identifies Entralgo and Hicks as each holding 33.33 % of Shares/Interest in TPG.[3]  On the second page Entralgo and Hicks, individually, each signed a "Personal Guarantee Agreement" dated September 10, 2019,[4] and under the heading "Terms of Sale" Entralgo signed as Managing Partner.[5]  On the third page under the heading "Pool Internal Use Only," a box is checked for "New Customer," the "Credit Limited Requested" is "10k," and a line for "Sales Center Manager Approval" is signed and dated September 17, 2019.[6]  The third page also shows that credit was approved on October 2, 2019, pursuant to terms of "Net 30," for a Credit Limit of "$10k."[7]  The fourth page sets forth "Terms and Conditions of Sale."[8]   An

---

[2]Exhibit A to Plaintiff's FAC, Docket Entry No. 7, pp. 7-10. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[3]Id. at 7.

[4]Id. at 8.

[5]Id.

[6]Id. at 9.

[7]Id.

[8]Id. at 10.

Addendum to the Credit Agreement dated September 10, 2019, contains a Personal Guarantee Agreement — Additional Guarantors signed by Thompson, individually, and dated September 10, 2019.[9]  A separate page titled "Authorization to Sign" for TPG Account # 247771 dated September 10, 2019, signed by Entralgo as Owner/President, contains three names and signatures: Entralgo, Hicks, and Thompson.[10]

## B.    Procedural Background

Plaintiff filed this action on December 30, 2022, against Defendants TPG, Entralgo, Hicks, and Thompson.[11]  On January 23, 2023, Plaintiff filed Plaintiff's FAC asserting claims against the same defendants and asserting that "[t]his Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a). Plaintiff is not a resident of the State of Texas, and Defendants are residents of the State of Texas, and the amount in controversy exceeds $75,000.00."[12]  On January 26, 2023, Thompson filed an Original Answer,[13] and on March 7, 2023, TPG and Entralgo filed a joint Original Answer.[14]  Although an Affidavit of Service was filed on July 21, 2023, showing that Hicks was served with process on

------

[9]Id. at 11.

[10]Id. at 12.

[11]Plaintiff's Original Complaint, Docket Entry No. 1.

[12]Plaintiff's FAC, Docket Entry No. 7, p. 2 ¶ 6.

[13]Docket Entry No. 8.

[14]Docket Entry No. 11.

July 12, 2023,[15] Hicks has yet to make an appearance in this action.
On December 18, 2023, Entralgo filed a Suggestion of Bankruptcy,[16]
and the court entered an Order of Partial Dismissal dismissing
without prejudice the claims asserted against him.[17]

On December 20, 2023, Plaintiff filed the pending motion
seeking summary judgment on all of the claims asserted in this
action except the claim for suit on a sworn account, attorneys'
fees, pre- and post-judgment interest, and costs of court.   On
January 9, 2024, Defendants TPG and Thompson filed their response
to Plaintiff's MSJ, and on January 16, 2024,  Plaintiff filed a
reply in support of its motion for summary judgment.   Defendant
Entralgo has not filed a response to the pending motion because the
claims against him were dismissed on December 18, 2023.   Although
Defendant Hicks has been served with process, he has neither filed
an answer to the claims asserted against him nor filed a response
to the pending motion.

Because Plaintiff's MSJ failed to cite authority in support of
its request for pre-judgment interest, on January 19, 2024, the
court ordered Plaintiff to supplement the pending motion to explain
its request for pre-judgment interest, and gave Defendants the
opportunity to respond to Plaintiff's supplement.   Plaintiff filed
the supplement on January 24, 2024, but Defendants have not filed
a response thereto.

---

[15]Docket Entry No. 20.

[16]Docket Entry No. 23.

[17]Docket Entry No. 24.

## II. __Standard of Review__

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56. Factual disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) <u>(en banc)</u> (quoting <u>Celotex,</u> 106 S. Ct. at 2553-2554). If the moving party meets this burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial. <u>Id.</u> "For any matter on which the non-movant would bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden

5

of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." <u>Transamerica Insurance Co. v. Avenell,</u> 66 F.3d 715, 718-19 (5th Cir. 1995) (per curiam).  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a <u>genuine issue for trial.</u>'"  <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,</u> 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis in the original)).  "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.,</u> 120 S. Ct. 2097, 2110 (2000).  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little,</u> 37 F.3d at 1075.


### III. <u>Analysis</u>

Plaintiff seeks summary judgment on the breach of contract claim or, alternatively, the quantum meruit claim asserted against TPG, and the breach of guarantee claims asserted against Entralgo, Hicks, and Thompson.  Plaintiff also seeks summary judgment on its claim for attorneys' fees against all the Defendants, as well as pre- and post-judgment interest and costs of court.[18]  Defendants

---

[18]<u>See</u> Plaintiff's MSJ, Docket Entry No. 26.

6

TPG and Thompson argue that Plaintiff's motion for summary judgment on the claims asserted against them should be denied because there are genuine issues of material fact for trial, but have not expressed any opposition to Plaintiff's request for attorneys' fees, pre- and post-judgment interest, and costs of court should the court grant Plaintiff's MSJ.[19]   The claims asserted against Defendant Entralgo were dismissed on December 18, 2023,[20] and Defendant Hicks has not responded to Plaintiff's MSJ.[21]

## A.   Applicable Law

In a diversity case involving the interpretation of a contract, courts apply the substantive law of the forum state. <u>See Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.</u>, 86 F.4th 667, 675 (5th Cir. 2023) (citing <u>McLane Foodshare, Inc. v. Table Rock Restaurants, L.L.C.</u>, 736 F.3d 375, 377 (5th Cir. 2013)). Plaintiff and Defendants all cite Texas law in support of their respective arguments.[22]   Accordingly, the court concludes that Texas law applies to the claims asserted in this action.

---

[19]<u>See</u> Defendants' Response, Docket Entry No. 27.

[20]<u>See</u> Order of Partial Dismissal, Docket Entry No. 24.

[21]Although Defendant Hicks was served with process on July 12, 2023, he has neither answered nor opposed Plaintiff's MSJ.   <u>See</u> Affidavit of Service executed as to Hicks, Docket Entry No. 20.

[22]<u>See</u> Plaintiff's MSJ, Docket Entry No. 26, pp. 3 ¶ 8, 4 ¶ 13, and 6 ¶ 18; Defendants' Response, Docket Entry No. 27, pp. 2 ¶ 6 (citing Fifth Circuit case applying Texas law), 3 ¶ 9, and 4 ¶ 12.

**B.  Application of the Law to the Undisputed Facts**

    1.   <u>Plaintiff Is Entitled to Summary Judgment on Its Breach</u>
       <u>of Contract Claim but Is Not Entitled to Summary Judgment</u>
       <u>on Its Quantum Meruit Claim</u>

       (a)  Breach of Contract

Plaintiff alleges that it entered into a valid and enforceable agreement with TPG whereby it agreed to deliver goods to TPG, and in return, TPG agreed to compensate Plaintiff for those goods. Plaintiff alleges that it fully performed all of its contractual duties by delivering goods to TPG, but that TPG materially breached the agreement by failing to fully compensate Plaintiff for the delivered goods, and that TPG's material breach caused damages.[23] Citing the Affidavit of Katie Tong, Plaintiff's Senior Director for Credit, the Detail Aged Accounts Receivable Report attached thereto, and the deposition testimony of Entralgo and Thompson, Plaintiff argues that it is entitled to summary judgment on its breach of contract claim.[24]

Defendants TPG and Thompson argue that Plaintiff is not entitled to summary judgment on the breach of contract claim against TPG because "Plaintiff's own evidence establishes a fact issue on the existence of a breach on the part of TPG."[25] Defendants argue that

---

[23]Plaintiff's FAC, Docket Entry No. 7, p. 3 ¶¶ 13-19.

[24]Plaintiff's MSJ, Docket Entry No. 26, pp. 3-4 ¶¶ 8-12.

[25]Defendants' Response, Docket Entry No. 27, p. 3 ¶ 6.

[t]he contract entered into between Plaintiff and TPG states that the account covered by the [Credit Agreement] is account #24771.  See Exhibit A, p. 1-5.  The unpaid invoices which Plaintiff claims constitute a breach of the [Credit] Agreement are all invoiced to account #34771.  See Exhibit A, p. 11-12.

Plaintiff has not introduced any evidence to show that TPG breached the [Credit] Agreement covering account #24771.  Accordingly, there is a genuine issue of material fact as to the element of a breach.[26]

Plaintiff replies that Defendants' arguments fail because "(1) the Aged Accounts Receivable Report accurately attributes the amount due to the account number listed on the [Credit] Agreement, and even if TPG was assigned multiple account numbers, it ordered and received the goods and should pay for them."[27]

"In Texas, breach of contract requires four elements: (1) a valid contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages." Wease v. Ocwen Loan Servicing, L.L.C., 915 F.3d 987, 993 (5th Cir. 2019) (citing Henning v. OneWest Bank FSB, 405 S.W.3d 950, 969 (Tex. App. — Dallas 2013, no pet.)).  Each of these four elements is established by undisputed evidence cited in Plaintiff's MSJ.  The existence of a valid contract between Plaintiff and TPG is evidenced by the Credit Agreement attached to Plaintiff's FAC, and by the Affidavit of Katie Tong, Plaintiff's Senior Director for Credit, who states that

---

[26]Id.  ¶¶ 7-8. As Plaintiff notes, "Defendants consistently refer to the numbers '24771' and '34771' throughout their Response. However, Defendants' numbers are missing a digit, as the documents to which Defendants refer include the numbers '247771' and '347771.'" Plaintiff's Reply, Docket Entry No. 28, p. 3 n. 7.

[27]Plaintiff's Reply, Docket Entry No. 28, pp. 2-3 ¶ 8.

"[t]his action is based on goods provided by SCP to Defendants under a line of credit extended to TPG. . . . A true and correct copy of the [Credit Agreement] is attached hereto as Exhibit 1-A, and referenced herein."[28]  Plaintiff's performance, defendant's breach, and the resulting damages are also evidence by the Tong Affidavit, which states that "[d]espite delivery of such goods, Defendants failed to compensate SCP,"[29] and

> [t]he principal balance of $252,797.48 is due on the account.  A true and correct copy of the Detail Aged Accounts Receivable Report generated by SCP and evidencing the balance due under the [Credit] Agreement[] is attached hereto as Exhibit 1-B. The amount is just and true, it is due, and all just and lawful offsets, payments and credits have been allowed.[30]

Tong's affidavit testimony is corroborated by the deposition testimony of Entralgo and Thompson.  Entralgo, TPG's Managing Partner, testified that TPG entered into a contract with Plaintiff, and that TPG is indebted to Plaintiff under the contract in the amount of $252,797.48.[31]  Thompson, TPG's Managing Member, testified

---

[28]Affidavit of Katie Tong ("Tong Affidavit"), Exhibit 1 to Plaintiff's MSJ, Docket Entry No. 26-1, p. 2 ¶ 5 (citing Credit Agreement, Exhibit 1-A, Docket Entry No. 26-2, pp. 1-6).

[29]Id. ¶ 7.

[30]Id. ¶ 8 (citing Detail Aged Accounts Receivable Report as of December 7, 2022, Exhibit 1-B, Docket Entry No. 26-3).

[31]Plaintiff's MSJ, Docket Entry No. 26, p. 3 ¶ 9 (quoting Videoconference Oral Deposition of Kevin Entralgo ("Entralgo Deposition"), p. 8:6-15, Exhibit 3 to Plaintiff's MSJ, Docket Entry No. 26-5, p. 9).

that TPG is indebted to Plaintiff in the principal amount of approximately $252,000.[32]

Defendants have not offered evidence contradicting Plaintiff's summary judgment evidence. Instead, Defendants argue that

[t]he contract entered into between Plaintiff and TPG states that the account covered by the [Credit Agreement] is account #24771. See Exhibit A, p. 1-5. The unpaid invoices which Plaintiff claims constitute a breach of the [Credit] Agreement are all invoiced to account #34771. See Exhibit A, p. 11-12.

Plaintiff has not introduced any evidence to show that TPG breached the [Credit] Agreement covering account #24771. Accordingly, there is a genuine issue of material fact as to the element of a breach.[33]

Although the Aged Accounts Receivable Report reflects a "Cust#" of "347771 (Job Acct)," it clearly states that the Customer Name is "Texas Pool" and that the "Commercial Acct" is "(247771)."[34] Therefore, the court concludes that Plaintiff is entitled to summary judgment on the breach of contract claim asserted against TPG because undisputed evidence establishes that TPG entered into the Credit Agreement with Plaintiff, that Plaintiff performed the Agreement by providing goods to TPG valued at $252,797.48, and that Plaintiff has been damaged in that amount by TPG's failure to pay for the goods that Plaintiff provided.

---

[32]Id. at 4 ¶ 10 (quoting Deposition of Bryan Thompson ("Thompson Deposition"), pp. 7:24-8:5, Exhibit 2 to Plaintiff's MSJ, Docket Entry No. 26-4, pp. 8-9).

[33]Defendants' Response, Docket Entry No. 27, p. 3 ¶¶ 7-8 (citing Detail Aged Accounts Receivable Report, Exhibit A, Docket Entry No. 27-1, pp. 11-12).

[34]Detail Aged Accounts Receivable Report, Exhibit A, Docket Entry No. 27-1, pp. 11-12.

(b)   Quantum Meruit and Suit on a Sworn Account

Plaintiff alleges in the alternative that it is entitled to recover payment for the goods delivered to TPG in quantum meruit or suit on a sworn account.[35]  Plaintiff argues that it is entitled to summary judgment on its quantum meruit claim because it provided TPG goods for TPG's benefit, that TPG accepted the goods, that when it accepted the goods TPG knew or should have known that Plaintiff expected to be compensated for the goods, that TPG's acceptance of the goods without payment damaged Plaintiff, and that failure to allow Plaintiff to recover the reasonable value of the goods delivered to TPG would result in the unjust enrichment of TPG.[36]

Defendants TPG and Thompson argue that Plaintiff is not entitled to summary judgment on its quantum meruit claim because "there is a genuine issue of material fact as to whether TPG had reasonable notice that the plaintiff expected to be compensated."[37] Defendants argue that

> [t]he contract entered into between Plaintiff and TPG states that the account covered by the [Credit] Agreement is Account #24771. See Exhibit A, p. 1-5.  The unpaid invoices which Plaintiff claims constitute a breach of the Agreement are all invoiced to account #34771.  See Exhibit A, p. 11-12.
>
> TPG did not have notice that Plaintiff expected to be paid under the [Credit] Agreement, as all expenses were invoiced to an account not covered by the [Credit] Agreement.  Accordingly, there is a genuine issue of

---

[35]Plaintiff's FAC, Docket Entry No. 7, pp. 3-4 ¶¶ 20-25.

[36]Plaintiff's MSJ, Docket Entry No. 26, p. 6 ¶¶ 18-19.

[37]Defendants' Response, Docket Entry No. 27, p. 4 ¶ 12.

12

material fact as to whether TPG had notice of Plaintiff's expectation of compensation.[38]

Plaintiff replies that

> [e]ven assuming _arguendo_ that TPG had an account separate and apart from the account under the [Credit] Agreement, TPG would still remain obligated to pay for the goods it ordered and received from SCP.  Suggesting a separate account existed from the [Credit] Agreement does not mean TPG is not responsible for paying for the goods it ordered and received.   Thus, even if the [Credit] Agreement was set aside for the sake of Defendants' argument, SCP remains entitled to summary judgment on its quantum meruit claim against TPG as there can be no doubt that TPG knew SCP expected to be paid for the goods it delivered, just as it had been for the preceding three years.[39]

"Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'"   Hill v. Shamoun & Norman, LLP, 544 S.W.3d 724, 732 (Tex. 2018) (quoting In re Kellogg Brown & Root Inc., 166 S.W.3d 732, 740 (Tex. 2005) (quoting Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990))).   "The purpose of this common law doctrine is to prevent a party from being 'unjustly enriched' by 'retain[ing] the benefits of the . . . performance without paying anything in return.'"   Id. (quoting Truly v. Austin, 744 S.W.2d 934, 938 (Tex. 1988)).   To recover on its quantum meruit claim for goods that Plaintiff provided to TPG, Plaintiff must prove that

> (1) valuable services were rendered or materials furnished;

---

[38]Id. ¶¶ 13-14.

[39]Plaintiff's Reply, Docket Entry No. 28, p. 4 ¶ 12.

(2) for the person sought to be charged;

(3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and
(4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.

Id. at 732-33 (citing Vortt, 787 S.W.2d at 944).  A party generally cannot recover in quantum meruit when there is a valid contract covering the services or material furnished.  Id. at 733 (citing In re Kellogg Brown & Root, 166 S.W.3d at 740).    However, the existence of an express contract does not preclude recovery in quantum meruit for the reasonable value of work performed and accepted which is not covered by an express contract.  Id. at 737 (citing Black Lake Pipe Line Co. v. Union Construction Co., 538 S.W.2d 80, 86 (Tex. 1976), overruled on other grounds by Sterner v. Marathon Oil Co., 767 S.W.2d 686 (Tex. 1989)).    The question of whether an express contract covers the goods at issue is a legal question.  Id.

For the reasons stated above in § III.B.1(a), the court has already concluded that a Plaintiff is entitled to summary judgment on the breach of contract claim asserted against TPG for TPG's failure to pay for goods that Plaintiff provided pursuant to a valid contract, i.e., the Credit Agreement.  Because Plaintiff's quantum meruit claim seeks recovery for TPG's failure to pay for goods provided pursuant to the Credit Agreement, the court's conclusion that the Credit Agreement is valid contract precludes

14

Plaintiff's recovery in quantum meruit.  Accordingly, Plaintiff is not entitled to summary judgment on its quantum meruit claim.[40]

>    2.    Plaintiff Is Entitled to Summary Judgment on the Breach
>           of Guarantee Claims Asserted Against Hicks and Thompson

Plaintiff alleges that the individual defendants, Hicks and Thompson each entered into a valid and enforceable Personal Guarantee Agreement where each, jointly and separately, guaranteed all amounts owed to Plaintiff by TPG.[41]  Plaintiff alleges that it performed fully all of its contractual obligations under the agreements, that despite this performance, TPG failed to fully compensate Plaintiff, and that pursuant to the Personal Guarantees executed by Hicks and Thompson, Hicks and Thompson are each, jointly and separately, responsible for payments TPG failed to make, and that Hicks and Thompson each, jointly and separately, breached their respective guarantee by failing to make any payment on behalf of TPG.[42]

---

[40]Like its quantum meruit claim, Plaintiff has asserted a claim for suit on a sworn account as an alternative to its breach of contract claim.  See Plaintiff's FAC, Docket Entry No. 7, p. 4 ¶¶ 26-31.  Although Plaintiff has not sought summary judgment on its suit on a sworn account claim, this claim fails for essentially the same reason that Plaintiff's quantum meruit claim fails.  The law in Texas prevents recovery on a sworn account when there is an express contract containing all material terms.  Patton v. Archer, 590 F.2d 1319, 1324 (5th Cir. 1979). Here, the contract between Plaintiff and TPG was written and contained all material terms.

[41]Plaintiff's FAC, Docket Entry No. 7, p. 4 ¶ 32.  See also Exhibit A, Personal Guarantee Agreement, Docket Entry No. 7, p. 8 (Hicks), and Personal Guarantee Agreement — Additional Guarantors, p. 11 (Thompson).

[42]Plaintiff's FAC, Docket Entry No. 7, pp. 4-5 ¶¶ 33-38.

15

(a)   Thompson

Thompson argues that Plaintiff is not entitled to summary judgment on the breach of guarantee claim asserted against him because "there is a genuine issue of material fact on the element of the amount of damages claimed by Plaintiff under the personal guarantee."[43]   TPG and Thompson argue that

> [t]he personal guarantee signed by Thompson states that the credit limit of the personal guarantee is $10,000.00, well below the $252,797.48 claimed by Plaintiff.  Exhibit A, p. 3.  Furthermore, the personal guarantee was for account #24771.  See Exhibit A, p. 2.  The invoices that Plaintiff relies on in establishing the amount owed were all invoiced to account #34771.  See Exhibit A, p. 11-12.
>
> Plaintiff has not produced sufficient evidence to show the full amount it is owed under the guarantee, nor has Plaintiff produced evidence to show that the invoices to account #34771 are covered by the personal guarantee. Accordingly, there is a genuine issue of material fact as to the amount owed to Plaintiff under the terms of the guarantee.[44]

Plaintiff replies that "Defendants' argument is flawed because: (1) the Guarantee is not limited to any specific account number; and (2) the Guarantee is not limited to any specified amount."[45]

Courts interpret guarantees the same way that they interpret any other written agreement, according to the general principles of contract interpretation articulated by the Texas Supreme Court.

---

[43]Defendants' Response, Docket Entry No. 27, p. 3 ¶ 9.

[44]Id. at pp. 3-4 ¶¶ 10-11.

[45]Plaintiff's Reply, Docket Entry No. 28, p. 4 ¶ 14.

See McLane, 736 F.3d at 377 (citing Coker v. Coker, 650 S.W.2d 391 (Tex. 1983)).  The court's first task is to determine whether the contract is enforceable as written, without resort to parol evidence.  Id. (citing J. M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003)).  The court's primary objective is to ascertain the intentions of the parties as expressed in the contract.  Id. (citing Lopez v. Muñoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000)).  "To achieve this objective, the court should examine the entire contract in order to 'harmonize and give effect to all of its provisions so that none will be rendered meaningless.'"  Id. (quoting Webster, 128 S.W.3d at 229).

> A contract is unambiguous if it can be given a definite or certain legal meaning. . . Ambiguity does not arise because of a "simple lack of clarity," or because the parties proffer different interpretations of the contract. DeWitt County Electric Cooperative, Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999) (citations omitted). . . [A] contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction. . . If the contract is ambiguous, courts may consider parol evidence for the purpose of ascertaining the parties' intent. David J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450–51 (Tex. 2008).

McLane, 736 F.3d at 378.  "[W]here the interpretation of a guaranty is in dispute, the guarantor 'is entitled to have his agreement strictly construed,' and '[w]here uncertainty exists as to the meaning of a contract of guaranty, its terms should be given a construction which is most favorable to the guarantor.'"  WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc., 844 F.3d 473, 478 (5th Cir. 2016) (quoting Coker, 650 S.W.2d at 394 n. 1).

17

Citing the Credit Agreement, Thompson argues that "[t]he personal guarantee signed by Thompson states that the credit limit of the personal guarantee is $10,000.00, well below the $252,797.48 claimed by Plaintiff,"[46] and that "the personal guarantee was for account #24771. . . The invoices that Plaintiff relies on in establishing the amount owed were all invoiced to account #34771."[47]

While the Credit Agreement shows that the credit limit requested was "10K,"[48] the Personal Guarantee Agreement signed by Thompson states in pertinent part that "[i]n consideration of [Plaintiff's] . . . agreeing to sell goods to customer, I/We the undersigned (herinafter "Guarantors"), jointly and severally, hereby personally guarantee payment of any all amounts as may be owned to [Plaintiff] by customer whether or not such amounts exceed stated credit limits."[49]   Moreover, the "Terms and Conditions of Sale" state that "Seller reserves the right . . . to modify . . . credit within its sole discretion."[50]   Thus, Thompson's personal guarantee is not limited to a specific amount.   Nor is Thompson's personal guarantee limited to a specific account.   While the number "247771" is handwritten in the upper right-hand corner of

---

[46]Defendants' Response, Docket Entry No. 27, p. 3 ¶ 10.

[47]*Id.*

[48]Credit Agreement, Exhibit A to Plaintif's FAC, Docket Entry No. 7, p. 9.

[49]*Id.* at 11.

[50]*Id.* at 10 (last paragraph).

Thompson's personal guarantee, the text of the guarantee does not reference any account number and, instead, clearly states that it "guarantee[s] payment of any all amounts as may be owned to [Plaintiff] by customer,"[51] and identifies the customer as TPG.[52] Because Thompson's personal guarantee is not limited to a specific amount or to a specific account, and because for the reasons stated above in § III.B.1(a), the court has already concluded that the Aged Accounts Receivable Report accurately attributes that amount due to the handwritten account number on Thompson's personal guarantee, and because Thompson testified at his deposition that TPG is indebted to Plaintiff in the principal amount of approximately $252,000, but also that he guaranteed purchases from Plaintiff to TPG,[53] Plaintiff's MSJ on the breach of guarantee claim asserted against Thompson will be granted.

            (b)  Hicks

     Despite having been served with process on July 12, 2023 (Docket Entry No. 20), Hicks has yet to make an appearance in this action.  Although Plaintiff filed the pending motion for summary judgment on December 20, 2023, and Hick's response was due on

---

[51]Id. at 11.

[52]Id.

[53]Thompson Deposition, pp. 7:24-8:8, Exhibit 2 to Plaintiff's MSJ, Docket Entry No. 26-4, pp. 8-9.

January 10, 2024,[54] Hicks has not responded to Plaintiff's motion. Local Rule 7.4 states that "[f]ailure to respond to a motion will be taken as a representation of no opposition."  The Fifth Circuit has held that a proper sanction for failure to respond to a dispositive motion is for the court to decide the motion on the papers before it.  <u>Ramsay v. Bailey</u>, 531 F.2d 706, 709 n. 2 (5th Cir. 1976)(per curiam), <u>cert. denied,</u> 97 S. Ct. 1139 (1977) (citing <u>Woodham v. American Cystoscope Co. of Pelham, New York,</u> 335 F.2d 551, 556-57 (5th Cir. 1964)).  Because Hick's personal guarantee is the same as Thompson's personal guarantee, for the reasons that the court has already concluded that Plaintiff is entitled to summary judgment on the breach of guarantee claim asserted against Thompson, the court concludes that Plaintiff is entitled to summary judgment on the breach of guarantee claim asserted against Hicks. Accordingly, Plaintiff's MSJ on the breach of guarantee claim asserted against Hicks will be granted.


3.   <u>Plaintiff Is Entitled to Summary Judgment on Its Claims for Attorneys' Fees and Pre-Judgment Interest</u>

(a)  Attorneys' Fees

Plaintiff alleges that

[a]s a result of Defendants' respective breaches and failures to compensate Plaintiff, SCP has been required

---

[54]Under the Local Rules of the Southern District of Texas, a response to a motion is due 21 days after the motion is filed. S.D. Tex. L.R. 7.3, 7.4(A).

> to retain the services of counsel to prosecute this action. In accordance with Texas Civil Practice and Remedies Code § 38.001, the Default Provision of the Terms and Conditions of Sale portion of the Agreements, and the Personal Guarantee Agreement executed by Defendants, SCP is entitled to recover its costs, expenses, and attorney's fees incurred in seeking recovery of the amounts owed to SCP by TPG.[55]

Plaintiff argues that the court should grant the motion for summary judgment on its claim for attorneys' fees because

> [t]he uncontroverted evidence proves that TPG agreed to pay and reimburse SCP for all costs and expenses of collection, including reasonable attorneys' fees and expenses incurred in connection with collection of any indebtedness owed to SCP. Exh. 1-A. In addition, the uncontroverted evidence shows Defendants . . . Thompson[] and Hicks agreed to pay SCP all costs and expenses, including reasonable attorneys' fees in enforcing the Guarantee. Exh. 1-A.
>
> Accordingly, SCP is entitled to recover its reasonable attorneys' fees, expenses, and costs of court incurred in connection with this matter, including any and all levels of appeal and applications for petitions for review. The Declaration of K. Patrick Babb, attached as Exhibit [4] and incorporated by reference, establishes the amount of reasonable and necessary attorneys' fees and costs incurred in this action in the amount of $21,569.00 through presenting this summary judgment motion.[56]

Defendants have not objected to Plaintiff's request for attorneys' fees. Accordingly, the court concludes that Plaintiff is entitled to $21,569.00 in reasonable attorneys' fees.

---

[55]Plaintiff's FAC, Docket Entry No. 7, p. 5 § 44.

[56]Plaintiff's MSJ, Docket Entry No. 26, pp. 6-7 ¶¶ 20-21 (citing Declaration of K. Patrick Babb, Exhibit 4 to Plaintiff's MSJ, Docket Entry No. 26-6).

(b)   Pre-Judgment Interest

Citing <u>Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.</u>, 962 S.W.2d 507, 528 (Tex. 1998), Plaintiff argues that "[u]nder Texas law, pre-judgment interest may be awarded pursuant to either an enabling statute or general principles of equity."[57] Explaining that "[p]rejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment," <u>id.,</u> the Texas Supreme Court in <u>Kenneco</u> adopted the statutory method of accrual for common law prejudgment interest on breach of contract claims that accrue before suit is filed.   <u>Id.</u>

Plaintiff argues that "[b]ecause no statute authorizes pre-judgment interest in a breach of contract case, common law principles of equity apply in this case."[58]   Plaintiff argues that "prejudgment interest should be calculated at the rate of 8.5%."[59] Plaintiff explains that

> [u]nder Texas law, unless a contract specifies the rate, prejudgment interest is calculated at the post-judgment interest rate and is computed as simple interest.   Tex. Fin. Code §§ 304.103, 304.104.   The post-judgment interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation," unless that rate is less than five percent or more than fifteen percent.   Tex. Fin. Code § 304.003(c).   Thus, this provision sets a floor of five percent and a ceiling of fifteen percent for post-judgment and pre-judgment interest under Texas law.

---

[57]Plaintiff's Supplement, Docket Entry No. 30, p. 2 ¶ 3.

[58]<u>Id.</u>

[59]<u>Id.</u> at 1 ¶ 1.

Arete Partners, L.P. v. Gunnerman, 643 F.3d 410, 415 (5th
Cir. 2011) (citing Columbia Medical Center of Las
Colinas, Inc. v. Hogue, 271 S.W.3d 238, 255 (Tex. 2008)).

Plaintiff's Motion incorrectly utilized a former
prime rate (7.75%).   The current prime rate is in fact
8.5%.   Accordingly, the Court should apply a prejudgment
interest rate of 8.5% in this case. . .

In Texas, pre-judgment interest begins to accrue on
the earlier of (1) 180 days after the defendant receives
written notice of a claim; or (2) the date suit is filed.
Kenneco, 962 S.W.2d at 531.   Plaintiff filed its Original
Complaint on December 30, 2022.     Thus, prejudgment
interest should accrue from that date forward. . .[60]

Defendants have not objected to Plaintiff's request for pre-

judgment interest.  Accordingly, the court concludes that Plaintiff

is entitled to pre-judgment interest calculated at the rate of 8.5%

per annum from December 30, 2022, the date this action was filed,

to February 8, 2024, the date preceding the date of the Final

Judgment.   See Garden Ridge, L.P. v. Clear Lake Center, L.P., 504

S.W.3d 428, 453 n. 17 (Tex. App. — Houston [14th Dist.] 2016, no

pet.) ("The formula for calculating prejudgment interest is as

follows: 'Amount x Interest Rate x Time.   Time is calculated by

counting the number of days that have elapsed and dividing that by

the number of days in a year (365)." Hand & Wrist Ctr. of Houston,

P.A. v. Republic Servs., Inc., 401 S.W.3d 712, 716 (Tex. App. —

Houston [14th Dist.] 2013, no pet.).   Prejudgment interest accrues

from the accrual date until the day preceding the date of the

judgment . . .  See Tex. Fin. Code Ann. § 304.104.").

---

[60]Id. at 2-3 ¶¶ 5-7 (citing Selected Interest Rates (Daily_ —
H15, Board of Governors of the Federal Reserve System,
https://www.federalreserve.gov/releases/h15/     (last    visited
February 8, 2024).

## IV. Conclusions and Order

For the reasons stated above in § III.B.1(a), the court concludes that Plaintiff is entitled to summary judgment on the breach of contract claim asserted against TPG.

For the reasons stated above in § III.B.1(b), the court concludes that Plaintiff is not entitled to summary judgment on the quantum meruit claim asserted against TPG. The court also concludes that for essentially the same reasons, Plaintiff's claim for suit on a sworn account is not cognizable.

For the reasons stated above in § III.B.2(a), the court concludes that Plaintiff is entitled to summary judgment on the breach of guarantee claim asserted against Defendant Thompson.

For the reasons stated above in § III.B.2(b), the court concludes that Plaintiff is entitled to summary judgment on the breach of guarantee claim asserted against Defendant Hicks.

For the reasons stated above in § III.B.3, the court concludes that Plaintiff is entitled to summary judgment on its claims for attorneys' fees, pre-judgment interest, and costs asserted against Defendants TPG, Thompson, and Hicks.

Accordingly, it is hereby **ORDERED** that Plaintiff, SCP Distributors, L.L.C., recover judgment against Defendants Texas Pool Group, L.L.C., William Hicks, and Bryan Thompson, jointly and severally, in the principal amount of $252,797.48, prejudgment interest at the rate of 8.5% per annum beginning on December 30,

2022, and continuing to the date preceding the date of this Final Judgment in the amount of $23,842.61, and attorneys' fees in the amount of $21,569.00, for a total recovery now of $298,209.09; and post-judgment interest at the rate of 8.5% per annum beginning the date following the date of this Final Judgment until the judgment is paid in full.

Accordingly, Plaintiff's Motion for Summary Judgment, Docket Entry No. 26, is **GRANTED IN PART** and **DENIED IN PART**.

**SIGNED** at Houston, Texas, this 9th day of February, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE